## COURT'S FINAL JURY INSTRUCTIONS

*United States of America v. Aimee Marie Bock and Salim Ahmed Said*

Criminal No. 22-CR-223 (NEB/DTS)

JURY INSTRUCTION NO. 1
**Introduction**

Members of the jury, the instructions I gave you at the beginning of the trial and during the trial remain in effect. I will now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now. You must not single out some instructions and ignore others, because *all* are important. This is true even though some of those I gave you at the beginning of or during trial are not repeated here.

The instructions I am about to give you now, as well as those I gave you earlier, are in writing and will be available to you in the jury room. Again, all instructions, whenever given and whether in writing or not, must be followed.

JURY INSTRUCTION NO. 2
**Duty of Jury**

It is your duty to find from the evidence what the facts are. You will then apply the law, as I give it to you, to those facts. You must follow my instructions on the law, even if you thought the law was different or should be different.

You should not be influenced by any person's race, color, ethnicity, national origin, religion, gender, gender identity, sexual orientation, disability, or economic circumstances. You must decide the case solely on the evidence and the law before you and must not be influenced by any personal likes or dislikes, opinions, prejudices, sympathy, or biases, including unconscious bias. Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may express without conscious awareness, control, or intention. Like conscious bias, unconscious bias, too, can affect how we evaluate information and make decisions.

The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

JURY INSTRUCTION NO. 3
**Evidence; Limitations**

I have mentioned the word "evidence." The "evidence" in this case consists of the testimony of witnesses, the documents, and other things received as exhibits—this is, formally agreed to by the parties.

You may use reason and common sense to draw deductions or conclusions from facts which have been established by the evidence in the case.

Certain things are not evidence. I will list those things again for you now:

1. Statements, arguments, and questions by lawyers are not evidence.

2. Objections are not evidence. Lawyers have a right to object when they believe something is improper. You should not be influenced by the objection. If I sustained an objection to a question, you must ignore the question and must not try to guess what the answer might have been.

3. Testimony that I struck from the record, or told you to disregard, is not evidence and must not be considered.

4. Anything you saw or heard about this case outside the courtroom is not evidence.

Finally, you were instructed that some evidence was received for a limited purpose only, and you must follow that instruction.

JURY INSTRUCTION NO. 4
**Credibility of Witnesses**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, consider the witness' intelligence, the opportunity the witness had to have seen or heard the things testified about, the witness' memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things. Therefore, you need to consider whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

You should judge the testimony of defendant Aimee Bock and Salim Said in the same manner as you judge the testimony of any other witness.

JURY INSTRUCTION NO. 5
**Rule 1006 Summary Charts**

You will remember that certain summary charts were admitted in evidence. You may use those summary charts as evidence, even if all of the underlying documents and records are not here.

JURY INSTRUCTION NO. 6
**Testimony Under Plea Bargain**

You have heard evidence that Lul Ali, Sharmake Jama, Qamar Hassan, Abdulkadir Awale, Hanna Markegan, and Mohamed Hussein have each entered into a plea agreement with the prosecution. Their testimony was received in evidence and may be considered by you. You may give their testimony such weight as you think it deserves. Whether or not their testimony may have been influenced by the plea agreement is for you to determine.

The guilty pleas of Lul Ali, Sharmake Jama, Qamar Hassan, Abdulkadir Awale, Hanna Markegan, and Mohamed Hussein cannot be considered by you as any evidence of these defendants' guilt. Their guilty plea can be considered by you only for the purpose of determining how much, if at all, to rely upon their testimony.

## JURY INSTRUCTION NO. 7
### Credibility—Cooperating Witness

You have heard evidence that of Lul Ali, Sharmake Jama, Qamar Hassan, Abdulkadir Awale, Hanna Markegan, and Mohamed Hussein hope to receive a reduced sentence on criminal charges pending against him or her in return for their cooperation with the prosecution in this case. The witnesses entered into a plea agreement with the prosecution that provides, among other things, an agreement that the prosecution will recommend a less severe sentence than the witness would have faced if they had not cooperated. The Court has no power to reduce a sentence for substantial assistance unless the prosecution, acting through the United States Attorney, files a motion for a downward departure. If such a motion is filed by the prosecution, then it is up to the Court to decide whether to reduce the sentence at all, and if so, how much to reduce it.

You may give the testimony of Lul Ali, Sharmake Jama, Qamar Hassan, Abdulkadir Awale, Hanna Markegan, and Mohamed Hussein such weight as you think they deserve. Whether or not testimony of a witness may have been influenced by their hope of receiving a reduced sentence is for you to decide.

JURY INSTRUCTION NO. 8
**Credibility Of Witness—Alleged Accomplice**

An alleged accomplice is someone who claims to have participated in the commission of the crime. Such testimony must be examined and weighed with greater care than the testimony of a witness who does not claim to have participated in the commission of the crime.

The witnesses who fit this description are of Lul Ali, Sharmake Jama, Qamar Hassan, Abdulkadir Awale, Hanna Markegan, and Mohamed Hussein.

You must determine whether the testimony of the alleged accomplice has been affected by self-interest, or by an agreement made with the government, or by his or her own interest in the outcome of this case, or by prejudice against defendants.

The fact that an alleged accomplice has entered or agreed to enter a plea of guilty to the offense charged is not evidence of the guilt of any other person, including defendants. The witness' guilty plea cannot be considered by you as any evidence of these defendants' guilt. The witness' guilty plea can be considered by you only for the purpose of determining how much, if at all, to rely upon the witness' testimony.

JURY INSTRUCTION NO. 9

**Description of Charges; Indictment Not Evidence; Presumption of Innocence; Burden of Proof**

*Aimee Marie Bock*

The indictment in this case charges Aimee Bock with seven different crimes, namely: Wire Fraud Conspiracy in Count 1; Wire Fraud in Counts 2, 4, 5, 12; Conspiracy to Commit Federal Programs Bribery in Count 15; and Federal Programs Bribery in Count 40.

*Salim Ahmed Said*

The indictment in this case charges Salim Said with twenty-one different crimes, namely: Wire Fraud Conspiracy in Count 1; Wire Fraud in Count 2, 5, 8, and 12; Conspiracy to Commit Federal Programs Bribery in Count 15, Federal Programs Bribery in Counts 16, 17, 18, 19, 32, 34, 36, 37, and 38, Conspiracy to Commit Concealment Money Laundering in Count 41; and Engaging in Monetary Transactions in Property Derived from Unlawful Activity in Counts 42, 44, 51, 52, and 57.

The defendants have each pleaded not guilty to each of the crimes with which they are charged.

The indictment is simply the document that formally charges the defendants with the crime for which they are on trial. The indictment is not evidence. Nor is the chart of counts the Court provided you. At the beginning of the trial, I instructed you that you must presume the defendants to be innocent. Thus, the defendants began the trial with a

clean slate, with no evidence against him.

The presumption of innocence alone is sufficient to find the defendants not guilty. This presumption can be overcome as to each charge only if the government proved during the trial, beyond a reasonable doubt, each element of a crime charged.

Keep in mind that you must give separate consideration to the evidence about each individual defendant. Each defendant is entitled to be treated separately, and you must return a separate verdict for each defendant. Also keep in mind that you must consider, separately, each crime charged against each individual defendant, and you must return a separate verdict for each of those crimes charged.

There is no burden upon a defendant to prove that he or she is innocent. Instead, the burden of proof remains on the government throughout the trial. The fact that a defendant did not testify must not be considered by you in any way, or even discussed, in arriving at your verdict.

JURY INSTRUCTION NO. 10
**Elements of the Offense—Burden of Proof**

If, for any given count charged in the Indictment, each element of that charged offense has been proved beyond a reasonable doubt as to a defendant, then you must find that defendant guilty of the crime changed under that count. Otherwise, you must find that defendant not guilty of the crime charged under that count.

JURY INSTRUCTION NO. 11
**Reasonable Doubt**

Reasonable doubt is doubt based upon reason and common sense, and not doubt based on speculation. A reasonable doubt may arise from careful and impartial consideration of all the evidence, or from a lack of evidence. Proof beyond a reasonable doubt is proof of such a convincing character that a reasonable person, after careful consideration, would not hesitate to rely and act upon that proof in life's most important decisions. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. Proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

JURY INSTRUCTION NO. 12
**Timing of Offenses**

The indictment charges that the offenses alleged in each count were committed "in or about" or "on or about" a certain date. Although it is necessary for the government to prove beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged in the indictment, it is not necessary for the government to prove that the offense was committed precisely on the date charged.

JURY INSTRUCTION NO. 13
**Conspiracy: Co-Conspirator Acts and Statements**

Defendant Aimee Bock is charged with two conspiracy counts: Wire Fraud Conspiracy in Count 1 and Conspiracy to Commit Federal Programs Bribery in Count 15. Defendant Salim Said is charged with three conspiracy counts: Wire Fraud Conspiracy in Count 1, Conspiracy to Commit Federal Programs Bribery in Count 15, and Conspiracy to Commit Concealment Money Laundering in Count 41.

As you will hear in a moment, each conspiracy count involves an agreement between two or more people. For all conspiracy counts, keep the following in mind.

If you determine that an agreement existed and the defendant joined the agreement, then acts and statements knowingly done or made by a member of the agreement during the existence of the agreement and in furtherance of it may be considered by you as evidence pertaining to the defendant, even though the acts and statements were done or made in the absence of and without the knowledge of the defendant. This includes acts done or statements made before the defendant joined the agreement, because a person who knowingly, voluntarily, and intentionally joins an existing conspiracy becomes responsible for all of the conduct of the co-conspirators from the beginning of the conspiracy.

JURY INSTRUCTION NO. 14
**Wire Fraud Conspiracy**

It is a crime for two or more people to agree to commit a crime. The crime of Wire Fraud Conspiracy, as charged in Count 1 of the indictment against Aimee Bock and Salid Said, has four elements, which are:

*One*, on or before April 2020 through in or about 2022, two or more people reached an agreement to commit the crime of wire fraud (the elements of the crime of wire fraud will be provided in the next instruction);

*Two*, the defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time it was still in effect;

*Three*, at the time the defendant joined in the agreement, the defendant knew the purpose of the agreement;

*Four*, while the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

Count 1 of the indictment charges conspiracy to commit wire fraud. For you to find that the government has proved a conspiracy, you must unanimously find that there was an agreement to act for this purpose. You must unanimously agree which purpose or purposes motivated the members of the agreement to act. If you are unable to unanimously agree on at least one of these purposes, you cannot find the defendant guilty of conspiracy.

The agreement between two or more people to commit the crime of wire fraud does not need to be a formal agreement or be in writing. A verbal or oral understanding can be sufficient to establish an agreement.

It does not matter whether the crime of wire fraud was actually committed or whether the alleged participants in agreement actually succeeded in accomplishing their unlawful plan.

If you have determined that two or more people reached an agreement to commit wire fraud, you must next decide whether the defendant voluntarily and intentionally joined that agreement, either at the time it was first formed or at some later time while it was still in effect. Earlier, in deciding whether two or more people reached an agreement to commit the crime of wire fraud, you could consider the acts and statements of each person alleged to be part of the agreement. In deciding whether a defendant joined the agreement, you may consider only the acts and statements of that defendant.

A person joins an agreement to commit wire fraud by voluntarily and intentionally participating in the unlawful plan with the intent to further the crime of wire fraud. It is not necessary for you to find that the defendant knew all the details of the unlawful plan.

It is not necessary for you to find that the defendant reached an agreement with every person you determine was a participant in the agreement.

Evidence that a person was present at the scene of an event or events, or acted in the same way as others or associated with others, does not, alone, prove that the person

joined a conspiracy. A person who has no knowledge of a conspiracy, but who happens to act in a way that advances the purpose of the conspiracy, does not thereby become a member. A person's mere knowledge of the existence of a conspiracy, or mere knowledge that an objective of a conspiracy was being considered or attempted, or mere approval of the purpose of a conspiracy, is not enough to prove that the person joined in a conspiracy.

The agreement may last a long time or a short time. The members of an agreement do not all have to join it at the same time. You may find that someone joined the agreement even if you find that person did not know all of the details of the agreement.

A person may be a member of the agreement even if the person does not know all of the other members of the agreement or the person agreed to play only a minor part in the agreement.

To decide whether the defendant agreed to commit the crime of wire fraud, you should consider the elements of that crime, which I will describe in a moment.

You may consider these elements in determining whether the defendant agreed to commit the crime of wire fraud, keeping in mind that this count of the indictment only charges a conspiracy to commit wire fraud and does not charge that wire fraud was committed.

A person knows the purpose of the agreement if he or she is aware of the agreement and does not participate in it through ignorance, mistake, carelessness, negligence, or accident. It is seldom, if ever, possible to determine directly what was in

the defendant's mind. Thus, the defendant's knowledge of the agreement and its purpose can be proved like anything else, from reasonable conclusions drawn from the evidence.

It is not enough that the defendant and other alleged participants in the agreement to commit the crime of wire fraud simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. The defendant must have known of the existence and purpose of the agreement.

Without such knowledge, the defendant cannot be guilty of conspiracy, even if his or her acts furthered the conspiracy.

The defendant does not have to personally commit an act in furtherance of the agreement, know about it, or witness it. It makes no difference which of the participants in the agreement did the act. This is because a conspiracy is a kind of "partnership" so that under the law each member is an agent or partner of every other member, and each member is bound by or responsible for the acts of every other member done to further their scheme.

The act done in furtherance of the agreement does not have to be an unlawful act. The act may be perfectly innocent in itself.

It is not necessary that the government prove that more than one act was done in furtherance of the agreement. It is sufficient if the government proves one such act; but in that event, in order to return a verdict of guilty, you must all agree which act was done.

If all the elements for Conspiracy to Commit Wire Fraud for Count 1 have been

proved beyond a reasonable doubt, then you must find the defendant guilty of the crime charged under that count; otherwise, you must find the defendant not guilty of the crime charged under that count.

JURY INSTRUCTION NO. 15
**Single Conspiracy**

The indictment charges that the defendants were members of one single conspiracy to commit the crime of wire fraud.

One of the issues you must decide is whether there were really two (or more) separate conspiracies with different purposes and scopes. The government must convince you beyond a reasonable doubt that each defendant was a member of the conspiracy to commit the crime of wire fraud to the scope alleged in the indictment. If the government fails to prove this as to a defendant, then you must find that defendant not guilty of the conspiracy charge, even if you find that he or she was a member of some other conspiracy, including conspiracy among a subset of the smaller group to commit the crime of wire fraud. Proof that the defendant was a member of some conspiracy other than the one alleged in the indictment is not enough to convict.

JURY INSTRUCTION NO. 16
**Conspiracy: Co-Conspirator Liability**

If you find Aimee Marie Bock guilty of conspiring to commit the crime of wire fraud, you must then consider whether Aimee Marie Bock also committed the crime of wire fraud as charged in one or more of counts 2, 4, 5, or 12. Similarly, if you find Salim Ahmed Said guilty of conspiring to commit the crime of wire fraud, you must then consider whether Salim Ahmed Said also committed the crime of wire fraud as charged in one or more of counts 2, 5, 8, or 12.

Because a member of a conspiracy is responsible for a crime committed by any other member of the conspiracy, the following elements must be proved in order for you to find that Aimee Marie Bock or Salim Said committed the crime of wire fraud under a co-conspirator liability theory:

*One*, some other conspirator committed the crime of wire fraud, as set forth in Jury Instruction No. 17,

*Two*, that same conspirator was a member of the conspiracy at the time the wire fraud was committed;

*Three*, that same conspirator committed the crime of wire fraud in furtherance of the conspiracy;

*Four*, the wire fraud was within the scope of the conspiracy, or was reasonably foreseeable as a necessary, or natural consequence of the conspiracy; and

21

*Five*, Aimee Marie Bock or Salim Said was also a member of the conspiracy at the time the wire fraud was committed.

JURY INSTRUCTION NO. 17
**Wire Fraud**

The crime of Wire Fraud, as charged in Counts 2, 4, 5, 8, and 12 of the indictment, has three elements, which are:

*One*, the defendant voluntarily and intentionally devised or made up a scheme to defraud, or participated in a scheme to defraud with knowledge of the scheme's fraudulent nature, another out of money or property by means of material false representations or promises;

*Two*, the defendant acted with the intent to defraud; and

*Three*, the defendant used, or caused to be used, an interstate wire communication, that is, an e-mail or a wire transfer of funds, in furtherance of, or in an attempt to carry out, some essential step in the scheme.

I will now explain the specific defendants and specific emails involved in each of the five wire fraud counts.

- Count 2

  - o Count 2 charges Bock and Said with wire fraud based on a September 8, 2020, email from Bock to the Minnesota Department of Education (or MDE) containing an application to open the ASA Limited site that traveled through servers located outside the state of Minnesota.

- Count 4

- Count 4 charges Bock with wire fraud based on an October 19, 2020, email from Bock to MDE containing an application to open the Stigma-Free Willmar site that traveled through servers located outside the state of Minnesota.

- Count 5

  - Count 5 charges Bock and Said with wire fraud based on an October 20, 2020, email from Bock to MDE with the subject line "For-Profit Restaurant Clarifications" that traveled through servers located outside the state of Minnesota.

- Count 8

  - Count 8 charges Said with wire fraud based on a March 1, 2021, email from Said to Abdikerm Eidleh with the subject line "February summer meal counts Claims for Safari Restaurant" that traveled through servers located outside the state of Minnesota.

- Count 12

  - Count 12 charges Bock and Said with wire fraud based on a November 4, 2021, email from Abdihakim Ahmed to Bock containing fraudulent meal counts and a fake roster for the ASA Limited site that traveled through servers located outside the state of Minnesota.

The phrase "scheme to defraud" includes any plan or course of action intended to

deceive or cheat another out of money or property by employing material falsehoods, concealing material facts, or omitting material facts. It also means the obtaining of money or property from another by means of material false representations or promises. A scheme to defraud need not be fraudulent on its face but must include some sort of fraudulent misrepresentation or promise reasonably calculated to deceive a reasonable person.

A statement or representation is "false" when it is untrue when made or effectively conceals or omits a material fact.

A fact, falsehood, representation, or promise is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of a reasonable person in deciding whether to engage or not to engage in a particular transaction. However, whether a fact, falsehood, representation, or promise is "material" does not depend on whether the person was actually deceived.

To act with "intent to defraud" means to act knowingly and with the intent to deceive someone for the purpose of causing some financial loss to another or bringing about some financial gain to oneself or another to the detriment of a third party. With respect to false statements, the defendant must have known the statement was untrue when made or have made the statement with reckless indifference to its truth or falsity.

An "interstate wire communication" is a wire communication that crosses a state line. A "wire communication" includes telephone calls, electronic signals sent by wire

(such as a fax or a financial wire), the use of the Internet to send a message (such as an e-mail), and communicating with a website via the Internet.

It is not necessary that the defendant himself or herself contemplate the use of an interstate wire communication or specifically intend that an interstate wire communication be used. It is sufficient if an interstate wire communication was in fact used to carry out the scheme and the use of an interstate wire communication by someone was reasonably foreseeable.

The wire fraud counts of the Indictment charge that each defendant, along with the other defendants, devised, or participated in a scheme. The Government need not prove, however, that the defendants met together to formulate the scheme charged, or that there was a formal agreement among them, in order for them to be held jointly responsible for the operation of the scheme and the use of a wire transfer or email transmission for the purpose of accomplishing the scheme. It is sufficient if only one person conceives the scheme and the others knowingly, voluntarily and intentionally join in and participate in some way in the operation of the scheme in order for such others to be held jointly responsible.

It is not necessary that the Government prove all the details alleged in the Indictment concerning the precise nature and purpose of the scheme, that any interstate wire communication was itself false or fraudulent, that the alleged scheme actually succeeded in defrauding anyone, or that the use of the interstate wire communication

26

was intended as the specific or exclusive means of accomplishing the alleged fraud.

It is not necessary that the Government prove that any interstate wire communication was an essential part of the scheme. A wire communication may be routine or sent for a legitimate purpose so long as it assists in carrying out the fraud.

If all the elements for Wire Fraud for Counts 2, 4, 5, 8, and 12 have been proved beyond a reasonable doubt for the count you are considering, then you must find the defendant guilty of the crime charged under that count; otherwise, you must find the defendant not guilty of the crime charged under that count.

JURY INSTRUCTION NO. 18
**Conspiracy to Commit Federal Programs Bribery**

The crime of Conspiracy to Commit Federal Programs Bribery, as charged in Count 15 of the indictment against Aimee Bock and Salid Said, has four elements, which are:

*One*, two or more people reached an agreement to commit the crime of federal programs bribery (the elements of the crime of federal programs bribery will be provided in the next instruction);

*Two*, the defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time it was still in effect;

*Three*, at the time the defendant joined in the agreement, the defendant knew the purpose of the agreement; and

*Four*, while the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

For you to find that the government has proved a conspiracy, you must unanimously find that there was an agreement to act for this purpose. The agreement between two or more people to commit the crime of federal programs bribery does not need to be a formal agreement or be in writing. A verbal or oral understanding can be sufficient to establish an agreement.

It does not matter whether the crime of federal programs bribery was actually committed or whether the alleged participants in agreement actually succeeded in accomplishing their unlawful plan.

If you have determined that two or more people reached an agreement to commit federal programs bribery, you must next decide whether the defendant voluntarily and intentionally joined that agreement, either at the time it was first formed or at some later time while it was still in effect. Earlier, in deciding whether two or more people reached an agreement to commit the crime of federal programs bribery, you could consider the acts and statements of each person alleged to be part of the agreement. Now, in deciding whether a defendant joined the agreement, you may consider only the acts and statements of that defendant.

A person joins an agreement to commit federal programs bribery by voluntarily and intentionally participating in the unlawful plan with the intent to further the crime of federal programs bribery. It is not necessary for you to find that the defendant knew all the details of the unlawful plan.

It is not necessary for you to find that the defendant reached an agreement with every person you determine was a participant in the agreement.

The agreement may last a long time or a short time. The members of an agreement do not all have to join it at the same time. You may find that someone joined the agreement even if you find that person did not know all of the details of the agreement.

A person may be a member of the agreement even if the person does not know all of the other members of the agreement or the person agreed to play only a minor part in the agreement.

To decide whether the defendant agreed to commit the crime of federal programs bribery, you should consider the elements of that crime, which I will describe in a moment.

You may consider these elements in determining whether the defendant agreed to commit the crime of federal programs bribery, keeping in mind that this count of the indictment only charges a conspiracy to commit federal programs bribery and does not charge that federal programs bribery was committed.

A person knows the purpose of the agreement if he or she is aware of the agreement and does not participate in it through ignorance, mistake, carelessness, negligence, or accident. It is seldom, if ever, possible to determine directly what was in the defendant's mind. Thus, the defendant's knowledge of the agreement and its purpose can be proved like anything else, from reasonable conclusions drawn from the evidence.

It is not enough that the defendant and other alleged participants in the agreement to commit the crime of federal programs bribery simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. The defendant must have known of the existence and purpose of the agreement. Without such knowledge, the defendant cannot be guilty of conspiracy, even if his or her acts furthered

the conspiracy.

The defendant does not have to personally commit an act in furtherance of the agreement, know about it, or witness it. It makes no difference which of the participants in the agreement did the act. This is because a conspiracy is a kind of "partnership" so that under the law each member is an agent or partner of every other member, and each member is bound by or responsible for the acts of every other member done to further their scheme.

The act done in furtherance of the agreement does not have to be an unlawful act. The act may be perfectly innocent in itself.

It is not necessary that the Government prove that more than one act was done in furtherance of the agreement. It is sufficient if the Government proves one such act; but in that event, in order to return a verdict of guilty, you must all agree which act was done.

If all the elements for Conspiracy to Commit Federal Programs Bribery for Count 15 have been proved beyond a reasonable doubt, then you must find the defendant guilty of the crime charged under that count; otherwise, you must find the defendant not guilty of the crime charged under that count.

JURY INSTRUCTION NO. 19
**Single Conspiracy**

The indictment charges that defendants Aimee Bock and Salim Said were members of one single conspiracy to commit the crime of federal programs bribery.

One of the issues you must decide is whether there were really two (or more) separate conspiracies with different purposes and scopes. The prosecution must convince you beyond a reasonable doubt that each of the defendants named above was a member of the conspiracy to commit the crime of federal programs bribery to the scope alleged in the indictment. If the prosecution fails to prove this as to a defendant, then you must find that defendant not guilty of the conspiracy charge, even if you find that he or she was a member of some other conspiracy, including conspiracy among a subset of the smaller group to commit the crime of federal programs bribery. Proof that the defendant was a member of some conspiracy other than the one alleged in the indictment is not enough to convict.

JURY INSTRUCTION NO. 20
**Conspiracy: Co-Conspirator Liability**

If you find Aimee Marie Bock or Salim Said guilty of conspiring to commit the crime of federal programs bribery, you must then consider whether that same defendant also committed the crime of federal programs bribery.

Because a member of a conspiracy is responsible for a crime committed by any other member of the conspiracy, the following elements must be proved in order for you to find that Aimee Marie Bock or Salim Said committed the crime of federal programs bribery under a co-conspirator liability theory:

*One*, some other conspirator committed the crime of federal programs bribery, as set forth in Jury Instruction Nos. 22 and 23,

*Two*, that same conspirator was a member of the conspiracy at the time the federal programs bribery was committed;

*Three*, that same conspirator committed the crime of federal programs bribery in furtherance of the conspiracy;

*Four*, the federal programs bribery was within the scope of the conspiracy, or was reasonably foreseeable as a necessary, or natural consequence of the conspiracy; and

*Five*, Aimee Marie Bock or Salim Said was also a member of the conspiracy at the time the federal programs bribery was committed.

JURY INSTRUCTION NO. 21
**Bribery Defined**

The law distinguishes between two types of payments: bribes and gratuities. Under the federal programs bribery statute that defendants are charged under, only the giving and receiving of bribes, and the agreement to give or receive a bribe, is illegal.[1] Bribes are payments made or agreed to *before* an official act in order to influence the official with respect to that official act.[2] Gratuities are typically payments made to an official *after* an official act as a token of appreciation.[3]

---

[1] *Snyder v. United States*, 603 U.S. 1, 20 (2024) ("Section 666 proscribes bribes to state and local officials, while allowing state and local governments to regulate gratuities to state and local officials.").

[2] *Id.* at 5.

[3] *Id.*

JURY INSTRUCTION NO. 22
**Federal Programs Bribery**

<u>(Salim Said)</u>

Defendant Salim Said is charged with nine counts of Federal Programs Bribery. Specifically, he is charged with bribing an agent of a program receiving federal funds. That crime has five elements:

*One*, the person who received the bribe was an agent of a program receiving federal funds;

*Two*, the defendant corruptly gave, offered, or agreed to give something of value to that agent in connection with the program's business or operations;

*Three*, the payment, or the agreement to make the payment occurred before an official act in order to influence the agent with respect to that future official act;

*Four*, the transaction or series of transactions involved something of value of $5,000 or more; and

*Five*, the program received benefits in excess of $10,000 in a one-year period before or after the defendant corruptly gave, offered, or agreed to give something of value.

As used in this instruction, the term "corruptly" means that Salim Said acted voluntarily and intentionally and, at least in part, to influence or induce Abdikerm Eidleh to cause, or reward Abdikerm Eidleh for causing, Feeding Our Future to sponsor Salim Said and/or his co-conspirators' fraudulent participation in the Federal Child Nutrition Program.

35

In each of the nine counts against Salim Said, *Elements One*, *Three*, and *Four* are the same.

In *Element One*, Abdikerm Eidleh was an agent of Feeding Our Future;

In *Element Three*, the payment, or the agreement to make the payment, occurred before an official act in order to influence Abdikerm Eidleh with respect to that future official act, meaning sponsoring or continuing to sponsor Salim Said and/or his co-conspirators' fraudulent participation in the Federal Child Nutrition; and

In *Element Four*, the transaction or series of transactions involved something of value of $5,000 or more.

*Elements Two* and *Five* differ for each count. I will now explain *Elements Two* and *Five* for each of the nine counts.

- Count 16

  - *Element Two*, Salim Said corruptly gave, offered, or agreed to give about $1,500 to Abdikerm Eidleh; and

  - *Element Five*, Feeding Our Future received benefits in excess of $10,000 in the one-year period beginning on or about July 28, 2020, pursuant to the Federal Child Nutrition Program.

- Count 17

  - *Element Two*, Salim Said corruptly gave, offered, or agreed to give about $2,500 to Abdikerm Eidleh; and

- *Element Five*, Feeding Our Future received benefits in excess of $10,000 in the one-year period beginning on or about August 20, 2020, pursuant to the Federal Child Nutrition Program.

- Count 18

  - *Element Two*, Salim Said corruptly gave, offered, or agreed to give about $5,000 to Abdikerm Eidleh; and

  - *Element Five*, Feeding Our Future received benefits in excess of $10,000 in the one-year period beginning on or about September 15, 2020, pursuant to the Federal Child Nutrition Program.

- Count 19

  - *Element Two*, Salim Said corruptly gave, offered, or agreed to give about $5,000 to Abdikerm Eidleh; and

  - *Element Five*, Feeding Our Future received benefits in excess of $10,000 in the one-year period beginning on or about November 25, 2020, pursuant to the Federal Child Nutrition Program.

- Count 32

  - *Element Two*, Salim Said corruptly gave, offered, or agreed to give about $14,000 to Abdikerm Eidleh; and

- o *Element Five*, Feeding Our Future received benefits in excess of $10,000 in the one-year period beginning on or about February 25, 2021, pursuant to the Federal Child Nutrition Program.

- Count 34

  - o *Element Two*, Salim Said corruptly gave, offered, or agreed to give about $14,000 to Abdikerm Eidleh; and

  - o *Element Five*, Feeding Our Future received benefits in excess of $10,000 in the one-year period beginning on or about March 9, 2021, pursuant to the Federal Child Nutrition Program.

- Count 36

  - o *Element Two*, Salim Said corruptly gave, offered, or agreed to give about $7,000 to Abdikerm Eidleh; and

  - o *Element Five*, Feeding Our Future received benefits in excess of $10,000 in the one-year period beginning on or about March 23, 2021, pursuant to the Federal Child Nutrition Program.

- Count 37

  - o *Element Two*, Salim Said corruptly gave, offered, or agreed to give about $7,000 to Abdikerm Eidleh; and

- o *Element Five*, Feeding Our Future received benefits in excess of $10,000 in the one-year period beginning on or about March 25, 2021, pursuant to the Federal Child Nutrition Program.

- Count 38

  - o *Element Two*, Salim Said corruptly gave, offered, or agreed to give about $14,000 to Abdikerm Eidleh; and

  - o *Element Five*, Feeding Our Future received benefits in excess of $10,000 in the one-year period beginning on or about May 27, 2021, pursuant to the Federal Child Nutrition Program.

For each Count, if all five elements have been proved beyond a reasonable doubt, then you must find Salim Said guilty of the crime charged under that count; otherwise, you must find Salim Said not guilty of the crime charged under that count.

JURY INSTRUCTION NO. 23
**Federal Programs Bribery**

<u>(Aimee Bock)</u>

Defendant Aimee Bock is charged with one count of Federal Programs Bribery. Specifically, she is charged with soliciting or accepting a bribe as an agent of a program receiving federal funds. That crime has five elements:

*One*, Aimee Bock was an agent of Feeding Our Future;

*Two*, Aimee Bock corruptly solicited, demanded, accepted, or agreed to accept from Cosmopolitan Business Solutions, something of value, that is, about $310,000, in connection with Feeding Our Future sponsoring Cosmopolitan Business Solutions' fraudulent participation in the Federal Child Nutrition Program.

*Three*, the agreement to make the payment occurred before an official act in order to influence Aimee Bock with respect to that future official act, meaning sponsoring or continuing to sponsor Cosmopolitan Business Solutions' fraudulent participation in the Federal Child Nutrition Program;

*Four*, the transaction or transactions involved something of value of $5,000 or more; and

*Five*, Feeding Our Future received benefits in excess of $10,000 in the one-year period beginning on or about August 13, 2021, pursuant to the Federal Child Nutrition Program.

40

As used in this instruction, the term "corruptly" means that Aimee Bock acted voluntarily and intentionally and, at least in part, in return for being influenced or induced to cause, or as a reward for causing, Feeding Our Future to sponsor Cosmopolitan Business Solutions' fraudulent participation in the Federal Child Nutrition Program.

If all the elements for Federal Programs Bribery for Count 40 have been proved beyond a reasonable doubt, then you must find Aimee Bock guilty of the crime charged under that count; otherwise, you must find Aimee Bock not guilty of the crime charged under that count.

JURY INSTRUCTION NO. 24
**"Agent" Defined**

As used in the federal programs bribery instructions, the term "agent" means a person authorized to act on behalf of Feeding Our Future. An "agent" includes a servant or employee, and a partner, director, officer, manager, and representative.

JURY INSTRUCTION NO. 25
**Conspiracy to Commit Concealment Money Laundering**

The crime of Conspiracy to Commit Concealment Money Laundering, as charged in Count 41 of the indictment against Salim Said, has four elements:

*One*, two or more people reached an agreement to commit the crime of concealment money laundering (the elements of the crime of concealment money laundering will be provided in the next instruction);

*Two*, the defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time it was still in effect;

*Three*, at the time the defendant joined in the agreement, the defendant knew the purpose of the agreement; and

*Four*, while the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

Count 41 of the indictment charges conspiracy to commit concealment money laundering. For you to find that the government has proved a conspiracy, you must unanimously find that there was an agreement to act for this purpose.

The agreement between two or more people to commit the crime of concealment money laundering does not need to be a formal agreement or be in writing. A verbal or oral understanding can be sufficient to establish an agreement.

43

It does not matter whether the crime of concealment money laundering was actually committed or whether the alleged participants in agreement actually succeeded in accomplishing their unlawful plan.

If you have determined that two or more people reached an agreement to commit concealment money laundering, you must next decide whether the defendant voluntarily and intentionally joined that agreement, either at the time it was first formed or at some later time while it was still in effect. Earlier, in deciding whether two or more people reached an agreement to commit the crime of concealment money laundering, you could consider the acts and statements of each person alleged to be part of the agreement. Now, in deciding whether a defendant joined the agreement, you may consider only the acts and statements of that defendant.

A person joins an agreement to commit concealment money laundering by voluntarily and intentionally participating in the unlawful plan with the intent to further the crime of concealment money laundering. It is not necessary for you to find that the defendant knew all the details of the unlawful plan.

It is not necessary for you to find that the defendant reached an agreement with every person you determine was a participant in the agreement.

Evidence that a person was present at the scene of an event or events, or acted in the same way as others or associated with others, does not, alone, prove that the person joined a conspiracy. A person who has no knowledge of a conspiracy, but who happens

44

to act in a way that advances the purpose of the conspiracy, does not thereby become a member. A person's mere knowledge of the existence of a conspiracy, or mere knowledge that an objective of a conspiracy was being considered or attempted, or mere approval of the purpose of a conspiracy, is not enough to prove that the person joined in a conspiracy.

The agreement may last a long time or a short time. The members of an agreement do not all have to join it at the same time. You may find that someone joined the agreement even if you find that person did not know all of the details of the agreement.

A person may be a member of the agreement even if the person does not know all of the other members of the agreement or the person agreed to play only a minor part in the agreement.

To decide whether the defendant agreed to commit the crime of concealment money laundering, you should consider the elements of that crime, which are as follows:

*One*, the defendant conducted a financial transaction, which in any way or degree affected interstate or foreign commerce;

*Two*, the defendant conducted the financial transaction with money that involved the proceeds of unlawful activity;

*Three*, at the time the defendant conducted the financial transaction, the defendant knew the money represented the proceeds of some form of unlawful activity; and

*Four*, the defendant conducted the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of the unlawful activity.

You may consider these elements in determining whether the defendant agreed to commit the crime of concealment money laundering, keeping in mind that this count of the indictment only charges a conspiracy to commit concealment money laundering and does not charge that concealment money laundering was committed.

A person knows the purpose of the agreement if he or she is aware of the agreement and does not participate in it through ignorance, mistake, carelessness, negligence, or accident. It is seldom, if ever, possible to determine directly what was in the defendant's mind. Thus, the defendant's knowledge of the agreement and its purpose can be proved like anything else, from reasonable conclusions drawn from the evidence.

It is not enough that the defendant and other alleged participants in the agreement to commit the crime of concealment money laundering simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. The defendant must have known of the existence and purpose of the agreement.

Without such knowledge, the defendant cannot be guilty of conspiracy, even if his or her acts furthered the conspiracy.

The defendant does not have to personally commit an act in furtherance of the agreement, know about it, or witness it. It makes no difference which of the participants

in the agreement did the act. This is because a conspiracy is a kind of "partnership" so that under the law each member is an agent or partner of every other member and each member is bound by or responsible for the acts of every other member done to further their scheme.

The act done in furtherance of the agreement does not have to be an unlawful act. The act may be perfectly innocent in itself.

It is not necessary that the government prove that more than one act was done in furtherance of the agreement. It is sufficient if the Government proves one such act; but in that event, in order to return a verdict of guilty, you must all agree which act was done.

If all the elements for Conspiracy to Commit Concealment Money Laundering for Count 41 have been proved beyond a reasonable doubt, then you must find the defendant guilty of the crime charged under that count; otherwise, you must find the defendant not guilty of the crime charged under that count.

JURY INSTRUCTION NO. 26
**Single Conspiracy**

The indictment charges that defendants were members of one single conspiracy to commit the crime of money laundering.

One of the issues you must decide is whether there were really two (or more) separate conspiracies with different purposes and scopes. The prosecution must convince you beyond a reasonable doubt that each of the defendants named above was a member of the conspiracy to commit the crime of concealment money laundering to the scope alleged in the indictment. If the prosecution fails to prove this as to a defendant, then you must find that defendant not guilty of the conspiracy charge, even if you find that he was a member of some other conspiracy, including conspiracy among a subset of the smaller group to commit the crime of concealment money laundering. Proof that the defendant was a member of some conspiracy other than the one alleged in the indictment is not enough to convict.

JURY INSTRUCTION NO. 27
**Conspiracy: Co-Conspiracy Liability**

If you find Salim Said guilty of conspiring to commit the crime of concealment money laundering, you must then consider whether Salim Said also committed the crime of engaging in monetary transactions in property derived from unlawful activity.

Because a member of a conspiracy is responsible for a crime committed by any other member of the conspiracy, the following elements must be proved in order for you to find that Salim Said committed the crime of engaging in monetary transactions in property derived from unlawful activity:

*One*, some other conspirator committed the crime of engaging in monetary transactions in property derived from unlawful activity, as set forth in Jury Instruction No. 28,

*Two*, that same conspirator was a member of the conspiracy at the time the crime of engaging in monetary transactions in property derived from unlawful activity was committed;

*Three*, that same conspirator committed the crime of concealment money laundering in furtherance of the conspiracy;

*Four*, the crime of engaging in monetary transactions in property derived from unlawful activity was within the scope of the conspiracy, or was reasonably foreseeable as a necessary, or natural consequence of the conspiracy; and

49

*Five*, Salim Said was also a member of the conspiracy at the time the crime of engaging in monetary transactions in property derived from unlawful activity was committed.

JURY INSTRUCTION NO. 28

**Engaging in Monetary Transactions in Property Derived from Unlawful Activity**

<u>(Salim Said)</u>

Defendant Salim Said is charged with five counts of Monetary Transactions in Property Derived from Unlawful Activity. That crime has five elements. Element One for each of the five counts is different.

- Count 42

  - *Element One*, on or about February 24, 2021, Salim Said knowingly caused the payment of $47,000 toward the purchase of a 2021 Chevrolet truck.

- Count 44

  - *Element One*, on or about March 4, 2021, Salim Said knowingly caused to be made a payment of approximately $60,000 toward the purchase of a 2021 Mercedes.

- Count 51

  - *Element One*, on or about July 1, 2021, Salim Said knowingly caused to be made a payment of approximately $1,175,000 toward the purchase of a single-family home located in Plymouth, Minnesota.

- Count 52

  - *Element One*, on or about July 26, 2021, Salim Said knowingly caused to be made a payment of approximately $2,735,000 toward the purchase of a commercial building located on Park Avenue South in Minneapolis.

51

- Count 57

  - *Element One*, on or about August 30, 2021, Salim Said knowingly caused to be made a payment of approximately $2,400,000 toward the purchase of a commercial building located on Stelzer Road in Columbus, Ohio.

The remaining elements for the crime of Monetary Transactions in Property Derived from Unlawful Activity are the same for each Count. Those elements are as follows:

*Two*, that payment was of a value greater than $10,000 derived from wire fraud;

*Three*, Salim Said knew that the payment involved proceeds of a criminal offense;

*Four*, the payment took place within the United States; and

*Five*, the payment in some way or degree affected interstate commerce.

If all the elements for Engaging in Monetary Transactions in Property Derived from Unlawful Activity have been proved beyond a reasonable doubt, then you must find Salim Said guilty of the crime charged under that count; otherwise, you must find Salim Said not guilty of the crime charged under that count.

JURY INSTRUCTION NO. 29

**Definitions for Engaging in Monetary Transactions in Property Derived from Unlawful Activity**

A defendant may be found to have attempted to conduct a financial transaction if he or she intended to conduct a financial transaction and voluntarily and intentionally carried out some act which was a substantial step toward conducting that financial transaction, even if the transaction was never completed. These definitions apply just to Instruction Number 28.

The term "conducted," as used in this Instruction, includes initiating, concluding, or participating in initiating or concluding a transaction.

The phrase "financial transaction," as used in this Instruction, means a transaction which in any way or degree affects interstate or foreign commerce involving the movement of funds by wire or other means and/or a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

The phrase "financial institution" includes each agent, agency, branch, or office within the United States of any person doing business, whether or not on a regular basis or as an organized business concern, as a bank and/or money services business. Individuals, groups of individuals, and businesses not formally established as financial institutions, may in fact be a financial institution if they act in one of the capacities I have listed.

The phrase "interstate commerce," as used above, means commerce between any combination of states, territories, and possessions of the United States, including the District of Columbia.

The term "commerce" includes, among other things, travel, trade, transportation and communication.

It is not necessary for the government to show that the defendant actually intended or anticipated an effect on interstate or foreign commerce. All that is necessary is that interstate or foreign commerce was affected as a natural and probable consequence of the defendant's actions.

The term "proceeds" means any property, or any interest in property, that someone derives from, or obtains or retains, either directly or indirectly, as a result of the commission of wire fraud. It includes the gross receipts of wire fraud. Proceeds can be any kind of property, not just money. It can include personal property, like a car or a piece of jewelry, or real property, like an interest in land. So, for example: if someone robs a bank, the money he takes from the teller is the proceeds of the bank robbery; and if someone steals a car, the car is the proceeds of the theft.

The Government is not required to trace the property it alleges to be proceeds of wire fraud to a particular underlying offense. It is sufficient if the Government proves that the property was the proceeds of wire fraud generally.

The Government need not prove that all of the property involved in the

54

transaction or the transmission or transfer was the proceeds of wire fraud. It is sufficient if the Government proves that at least part of the property represents such proceeds.

The phrase "knew the money represented the proceeds of some form of unlawful activity," means that the defendant knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony offense under state or federal law. Thus, the Government need not prove that the defendant specifically knew that the money involved in the financial transaction represented the proceeds of wire fraud or any other specific offense; it need only prove that the defendant knew it represented the proceeds of some form, though not necessarily which form, of felony under state or federal law. I instruct you as a matter of law that wire fraud is a felony under federal law.

## JURY INSTRUCTION NO. 30
**Good Faith**

One of the issues in this case is whether the defendant acted in good faith. Good faith is a complete defense to the crimes charged. If a defendant did not act with the requisite mental state as specified in the instructions for each crime charged, then that defendant is not guilty of the charged offenses. The essence of the good faith defense is that one who acts with honest intentions and without the requisite mental state cannot be convicted of the crimes charged.

Good faith includes, among other things, an opinion or belief that is honestly held, even if the opinion is in error or the belief is mistaken.

Good faith also encompasses, among other things, an absence of malice or ill will, and an intention to avoid taking unfair advantage of another.

An honest mistake in judgment or an honest error in management does not rise to the level of criminal conduct.

However, even though a defendant honestly held a certain opinion or belief (such as a belief that a business venture would ultimately succeed, that investors would make a profit, or that investors would not lose money), a defendant does not act in good faith if he or she also knowingly made false or fraudulent representations or promises, corruptly gave money, or knowingly paid using the proceeds of a criminal offense. The

requisite mental state for each crime requires more than proof that a defendant only made a mistake in judgment or management, or was careless.

The Government has the burden of proving beyond a reasonable doubt that the defendant acted with the requisite mental state for each crime charged.

Evidence that the defendant acted in good faith may be considered by you, together with all the other evidence, in determining whether or not a defendant acted with the requisite mental state.

If the evidence in this case leaves you with a reasonable doubt as to whether a defendant acted with the intent to defraud, with corrupt intent, or in good faith, you must find that defendant not guilty of the count you are considering.

JURY INSTRUCTION NO. 31
**Intent**

Intent may be proved like anything else. You may consider any statements made and acts done by the defendant, and all the facts and circumstances in evidence which may aid in a determination of the defendant's knowledge or intent.

You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

JURY INSTRUCTION NO. 32
**"Knowingly" Defined**

The term "knowingly," as used in these instructions to describe the alleged state of mind of the Defendant charged in the count you are considering, means that he or she was conscious and aware of his or her actions, realized what he or she was doing or what was happening around him or her, and did not act because of ignorance, mistake, or accident.

JURY INSTRUCTION NO. 33
**Deliberate Ignorance/Willful Blindness**

You may find that a defendant acted knowingly if you find beyond a reasonable doubt that he or she believed there was a high probability that a certain fact or set of facts existed, and that he or she took deliberate actions to avoid learning of those facts. Knowledge may be inferred if the defendant deliberately closed the defendant's eyes to what would otherwise have been obvious to the defendant. A willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. You may not find the defendant acted "knowingly" if you find the defendant was merely negligent, careless, reckless, or mistaken as to the facts in question.

JURY INSTRUCTION NO. 34
**Types of Evidence**

Some of you may have heard the terms "direct evidence" and "circumstantial evidence." You are instructed that you should not be concerned with those terms. The law makes no distinction between direct and circumstantial evidence. You should give all evidence the weight and value you believe it is entitled to receive.

JURY INSTRUCTION NO. 35
**Separate Crime**

A separate crime is alleged against the defendant in each count of the Indictment.

Each alleged offense, and any evidence pertaining to it, should be considered separately

by the jury. The fact that you find the defendant guilty or not guilty of one of the offenses

charged should not control your verdict as to any other offense charged against him or

her. You must give separate and individual consideration to each charge.

JURY INSTRUCTION NO. 36
**Duty to Deliberate; Punishment Not a Factor; Verdict Form**

In conducting your deliberations and returning your verdict, there are certain rules you must follow. I will list those rules for you now.

*First*, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to individual judgment, because a verdict—whether guilty or not guilty—must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict.

*Third*, if the defendant is found guilty, the sentence to be imposed is my responsibility. You may not consider punishment in any way in deciding whether the government has proved its case beyond a reasonable doubt.

*Fourth,* if you need to communicate with me during your deliberations, you may send a note to me through the court security officer, signed by one or more jurors. I will

respond as soon as possible either in writing or orally in open court. You should not tell anyone—including me—how your votes stand numerically.

*Fifth*, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. The verdict, whether guilty or not guilty, must be unanimous as to each count. Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

*Finally*, the verdict form is simply the written notice of the decision that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdicts, your foreperson will fill in the form, sign and date it, and advise the court security officer that you are ready to return to the courtroom.