UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | | |
|---|---|---|
| United States of America, | ) | File No. 22-cr-223 (NEB/DTS) |
| Plaintiff, | ) | |
| v. | ) | |
| Aimee Marie Bock(1), Salim Ahmed Said(3), | ) | Courtroom 13W Minneapolis, Minnesota Monday, February 3, 2025 8:42 a.m. |
| Defendants. | ) | |

---

BEFORE THE HONORABLE NANCY E. BRASEL
UNITED STATES DISTRICT COURT DISTRICT JUDGE

**VOLUME I - JURY TRIAL PROCEEDINGS**

Court Reporter: RENEE A. ROGGE, RMR-CRR
United States Courthouse
300 South Fourth Street, Box 1005
Minneapolis, Minnesota 55415

* * *

Proceedings recorded by mechanical stenography; Transcript produced by computer.

* * *

APPEARANCES:

For Plaintiff: UNITED STATES ATTORNEY'S OFFICE
BY: JOSEPH H. THOMPSON
HARRY JACOBS
MATTHEW S. EBERT
DANIEL W. BOBIER
600 United States Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415

For Defendant Aimee Marie Bock(1): KENNETH UBONG UDOIBOK P.A.
BY: KENNETH U. UDOIBOK
310 Fourth Avenue South, #5010
Minneapolis, Minnesota 55415

For Defendant Salim Ahmed Said(3): COLICH & ASSOCIATES
BY: MICHAEL J. COLICH
ADRIAN SCOTT LAFAVOR-MONTEZ
RAGHEN LUCY
10 South Fifth Street, #420
Minneapolis, Minnesota 55402

* * *

**IN OPEN COURT**

**(JURY PANEL NOT PRESENT)**

**8:42 A.M.**

THE COURT: Good morning. You may all be seated.

Good morning again. We are on the record. The case is the United States versus Aimee Bock and Salim Said.

May I have appearances, beginning with the government.

MR. THOMPSON: Good morning, Your Honor. Joe Thompson on behalf of the United States. I'm here with several of my colleagues.

MR. JACOBS: Harry Jacobs on behalf of the United States.

MR. EBERT: Matthew Ebert on behalf of the United States.

MR. BOBIER: Dan Bobier on behalf of the United States.

THE COURT: Thank you and good morning.

Could you also just for the record -- this is the first time we will do this. Until we introduce parties to the jurors, could you identify the agents who are in the courtroom?

MR. THOMPSON: Yes, Your Honor. We are joined here at the table behind us by FBI Special Agent Jared Kary and FBI Forensic Accountant Pauline Roase.

THE COURT: Thank you.

And I know that I've given permission for I believe it's FBI Agent Travis Wilmer to be in the courtroom as well.

Do we expect him for jury selection or not?

MR. THOMPSON: Yes, we do.

THE COURT: All right. Thank you.

All right. And for the defense for Ms. Bock?

MR. UDOIBOK: Good morning, Your Honor. Kenneth Udoibok on behalf of Aimee Bock, who is in court to my right.

THE COURT: Good morning.

Good morning, Ms. Bock.

And for Mr. Said. There you go.

MR. COLICH: Your Honor, I have a problem with my voice this morning. Michael Colich on behalf of Mr. Said's defense team.

THE COURT: Good morning.

MR. MONTEZ: And good morning, Your Honor. Adrian Montez on behalf of Mr. Salim Said.

THE COURT: Good morning.

MS. LUCY: Good morning, Your Honor. Raghen Lucy also on behalf of Mr. Said.

THE COURT: And good morning.

And good morning, Mr. Said.

Thank you all for being here.

We are, I think, as you know, going to have the jurors seated in both courtroom 13W. That's this courtroom, and we'll have overflow jurors in 13E.

When we seat them all, I will go over first to 13E and swear those folks in. They are overflow jurors. In the event we need them, they will come into this courtroom for questioning.

I'll just go over there, welcome them briefly, swear them in, and then there's a video feed from this courtroom that will be streamed into that courtroom.

There will also be a video feed only for jury selection that will be streamed to another courtroom for overflow public seating and media. I don't think we'll need that beyond opening statements.

Hang on. I've got information about a juror who is a no show, so let me identify that person for you all.

It won't matter for now because it's an overflow juror. Juror Number 60 is a no show, and so that person 60 should be crossed off your list.

Ms. Wegner is going to hand you, I think, both a seating chart and the list of jurors. Those lists are numbered. I know you have your questionnaire books, which do not have names of the jurors. The list she's handing you now do have the names of the jurors.

Again, they are numbered, and I'll be taking them back at the end of the day today, so make sure that they come back to me.

The number that we need to get to is 39. There are 7 strikes for the government and 12 for the defendants to share and alternate strikes 2 each. And so we need 39 potential jurors to get to 16 jurors, which is 12, plus 4 alternates. So that was my math over the weekend. I'm hopeful that it is correct.

As you know, I've also given you the opportunity for attorney voir dire. That's ten minutes per attorney. We'll break at sometime in the morning. We'll also break at approximately noon for lunch. The jurors are going to go down to the jury room for lunch.

You all know, and I'm ordering now, not to have any contact with any potential juror, not even to pass the time of day.

The elevators in this courtroom -- or courthouse are slow. I'm hopeful that most of them work today. Sometimes we get down to two, but I'm hopeful that we've got a decent number running today.

I would appreciate it if you all, if you need to go down in the elevator, would not go down in the elevator with any of the potential jurors, even though that may slow you down. I just think that's going to be easier.

All right. That's the process. I think you have my voir dire script that I will follow.

Is there anything that you wish to place on the record before we bring the jurors up?

From the government?

MR. THOMPSON: No, Your Honor. Thank you.

THE COURT: Thank you.

Mr. Udoibok, for Ms. Bock?

MR. UDOIBOK: Yes. Yes, Your Honor. I would just request that the court instruct the jurors that if we seem to ignore them it's not out of disrespect.

THE COURT: I always do that.

MR. UDOIBOK: Okay. Thanks.

THE COURT: Yes. Thank you.

And Mr. Montez?

MR. MONTEZ: Nothing for Mr. Said, Your Honor.

THE COURT: Okay. All right. Thank you.

MR. THOMPSON: Your Honor, actually, one thing from the government.

At some point today, doesn't have to be right now, we should probably do a *Frye/Lafler* colloquy with Ms. Bock whose lawyer asked for a plea agreement last week, and we did tender her a plea agreement last week.

THE COURT: Okay. All right. Let's go ahead and do that now. We've got a little bit of time while the

jurors are organizing themselves.

So the request is simply, a *Frye/Lafler* is simply to place on the record the last plea offer that was given to each of you from the government and for me to confirm that you understand it and that you have intentionally rejected it or that if you wish to accept or reconsider.

Again, that's a very normal procedure. I don't get involved in your plea agreements. I have no idea what the government has offered you or what they haven't, nor do I have any opinion on what you should do, but we're getting on the record what that plea is so that each of you individually can state that you understand it and what you wish to do with it.

Mr. Thompson, do you wish to do that now?

MR. THOMPSON: I'm happy to, Your Honor.

THE COURT: Go ahead.

MR. THOMPSON: Okay.

THE COURT: And I'll just note that FBI Agent Travis Wilmer is in the courtroom as well and intends to be here during voir dire.

All right. Thank you. Go ahead.

MR. THOMPSON: And just so you know, with respect to Agent Wilmer, we have -- sometimes when we subpoena people, the subpoenas read the first time, the first day of trial, and people show up inadvertently. So he was

redirecting any witnesses who might have showed up today.

THE COURT: Yeah, and I understand. I mean, one of the reasons that I allowed three was I understand you all will be a bit in and out of the courtroom because you are coordinating witnesses or may be.

Go ahead.

MR. THOMPSON: Thank you.

Okay. Well, Your Honor, just last week at the request of Mr. Udoibok, the government sent a draft plea agreement for Ms. Bock. That plea agreement would have called her to plead guilty to Counts 5 and 15 of the indictment. That would be one count of wire fraud, in violation of Title 18 U.S.C. Sec. 1343; and Count 15, which is one count of conspiracy to commit federal programs bribery, in violation of Title 18 U.S.C. Secs. 371 and 666.

Pursuant to that plea, the guideline range that the government had that were set forth in that plea agreement, it would be an offense level of 41, a criminal history category of I, which would have resulted in a sentencing guideline range of 324 to 405 months in prison.

However, because the statutory maximum sentence for Count 5, the wire fraud count, is 20 years and the sentencing guideline for the 371 count would be five years, that would have capped the guidelines at 300 months in prison. So the guideline range would become 300 months,

which is the statutory maximum sentence.

THE COURT: All right. Thank you.

Ms. Bock, do you understand that offer?

DEFENDANT AIMEE BOCK: Yes, Your Honor.

THE COURT: And you went through it with your attorney?

DEFENDANT AIMEE BOCK: Yes, Your Honor.

THE COURT: And was it your intention and is your intention to reject that offer?

DEFENDANT AIMEE BOCK: It is.

THE COURT: All right. And, Mr. Thompson, at that time that offer includes a reduction for acceptance of responsibility?

MR. MORRISON: It would have, Your Honor. It would have been a two-level reduction for acceptance of responsibility, although the government would not have moved the third point for timely acceptance of responsibility in light of the late hour.

THE COURT: Thank you.

And as to Mr. Said?

MR. THOMPSON: Your Honor, we didn't actually tender a final, an actual plea agreement to Mr. Said. We did discuss generally the potential guideline range, ranges, with his lawyer. I don't have those in front of me, but I believe that they were tendered to his client last week and

Mr. Colich had discussions with Mr. Said.

I can look that up, if you want, Your Honor, what the range would have been there. The plea would have called for him to plead guilty to a wire fraud count with the offense level of 35 and a criminal history category of I, which would have resulted in a guideline range of 168 to 210 months in prison.

That would have included a two-level reduction for acceptance of responsibility, but not a third point for acceptance in light of the late hour.

THE COURT: All right.

Mr. Said, does that offer the one -- sound like the one that was communicated to you?

DEFENDANT SALIM SAID: Yes, Your Honor.

THE COURT: And was it your intention and is your intention to reject that offer?

DEFENDANT SALIM SAID: Yes, Your Honor.

THE COURT: You have had enough time to consider it with your attorneys?

DEFENDANT SALIM SAID: Yes, Your Honor.

THE COURT: All right.

All right. Having that placed on the record then, is there anything else that needs to go on the record before we call the jurors up?

MR. THOMPSON: No, Your Honor.

THE COURT: Okay. All right.

When they come up, you are going to be just sitting for a moment while I welcome the folks in 13E. That's a little bit of an uncomfortable situation, but I know that you all can handle that.

Again, when I go through voir dire -- let's do this: We'll go off the record in a moment. I intend to go through group questions. The voir dire script lays it out, group questions. Then I'll go through with the 39 in the front followup that I have on their questionnaires.

You likely will have followup that I don't ask. Before I turn it over to you, I will ask if there's a particular question you want me to ask anyone. I'm not going to do that juror by juror. I'm going to do it at the end. So keep your notes, and if you want me to follow up, we will do that.

Communications with me can be by headset. After we're completed with voir dire, I'll take motions for cause. Although you may ask, if it's a motion for cause that is an obvious one and you want to ask for it right then, go ahead and do that, because then we can fill in and it keeps the process moving.

My intention is simply to try to keep the process moving so that we can choose a jury as quickly as possible. As you've seen from their questionnaires, there aren't a lot

of them who have had a lot of media exposure to this case, and that may bode well for the questioning and the -- that particular issue with respect to potential jurors.

We're going to go off the record so that I can test the electronics and we can make sure that the headsets work.

All right? Thank you.

**(Off the record)**

THE COURT: All right. I'm going to step off.

Also, just as a reminder, this list is not to go out of the courtroom. Okay? So on breaks, et cetera, it's not to come out of the courtroom.

That's all I've got. I'll see you in a little bit. We're in recess.

THE CLERK: All rise.

* * *

(Recess taken at 8:58 a.m.)

**(Whereupon, jury voir dire was conducted and is bound separately on pages 14 through 211)**

* * *

I, Renee A. Rogge, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Certified by: /s/Renee A. Rogge
Renee A. Rogge, RMR-CRR